**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Criminal Case No. 15-cr-00058-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.    MICHAEL TODD OSBORN, and
2.    **COREY EARL ENGELEN,**

    Defendants.

---

**ORDER ON MOTIONS**

---

Currently before the Court are the following four motions filed by Defendant Corey Engelen: Motion for a Hearing to Determine the Admissibility of any Statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence (Doc. # 48); Motion for a Separate Trial (Doc. # 49); Motion to Dismiss Count 14 (Doc. # 50); and Partially Unopposed Renewed Motion for Disclosure of Fed. R. Evid. 608 and 404(b) Evidence (Doc. # 54).  The Court will address each motion in turn.

**I.    Motion for a Hearing to Determine the Admissibility of any Statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence (Doc. # 48)**

In response to Defendant Engelen's motion, the government asserts that it does not intend to offer any statements pursuant to Federal Rule of Evidence 801(d)(2)(E) in this case.  (Doc. # 57.)  Therefore, Defendant's motion for a hearing is moot.

II.     **Motion for a Separate Trial (Doc. # 49)**

Defendant moves, pursuant to Federal Rule of Criminal Procedure 14, for a trial separate from his co-defendant Michael Osborn.  (Doc. # 49 at 1.)  Both Defendant Engelen and Defendant Osborn were charged in the same indictment pursuant to Federal Rule of Criminal Procedure 8.  (Doc. # 3.)  Rule 8(b) states that an indictment or information "may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Rule 14 recognizes that joinder, even when proper under Rule 8(b), may prejudice either the government or a defendant.  Thus, Rule 14(a) provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Defendant Engelen does not allege that he was improperly charged in the same indictment as Defendant Osborn.  Instead, Defendant Engelen argues that, pursuant to Rule 14, justice requires that the Court sever his trial from Defendant Osborn's trial.

At the outset, the Court notes that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together."  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).  Joint trials "play a vital role in the criminal justice system" because they promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts."  *Richardson v. Marsh*, 481 U.S. 200, 209 (1987).

Defendant Engelen presents several arguments in support of his motion to severe, and the Court will address each in turn.

### A. Alleged Hearsay Evidence and Defendant Osborn's Statements to the Government

Defendant Engelen argues that, if his trial is not severed from Defendant Osborn's trial, he will not be able to exercise his "constitutional right to cross-examine the hearsay evidence of statements made by Mr. Osborn or any putative co-conspirator." (Doc. # 49 at 4.) According to Defendant Engelen:

> This hearsay evidence consists of dozens of fraudulent documents created by Mr. Osborn including: power point presentations containing multiple misstatements of fact; solicitation letters; forged subscription agreements; forged insurance documents; forged corporate documents; and faked excel spread sheets purporting to show investor gains.

(Doc. # 49 at 4.)

In addition, Defendant Engelen asserts that, according to the discovery that he has received, Defendant Osborn "made statements to investigating agents that implicate Mr. Osborn, attempt to extricate Mr. Osborn, and blame Mr. Engelen." (Doc. # 49 at 5.) Defendant Engelen argues that, if these statements were admitted during a joint trial and Defendant Osborn chose not to testify, his sixth amendment right to be confronted with the witnesses against him would be violated. (Doc. # 49 at 5.) In support of this argument, Defendant Engelen cites *Bruton v. United States*, 391 U.S. 123 (1968).

In response, the government asserts that the alleged "hearsay evidence"—which Defendant Engelen identifies as "dozens of fraudulent documents created by Mr.

3

Osborn"—are not in fact hearsay because they will not be offered to prove the truth of the matters asserted therein. (Doc. # 58 at 11.) The government states that it "intends to present this evidence to show [the] falsity of the documents, as part of its evidence to prove the scheme to defraud, an element of wire fraud." (Doc. # 58 at 11.)

With regard to Defendant Osborn's alleged statements to investigating agents, the government states that it

> does not intend to offer into evidence the statements made by Defendant Osborn to government agents in its case-in-chief in the joint trial in this case, with the following possible exception: In answer to a question about payments made to the California Department of Child Support from the Infinite One account, Defendant Osborn stated that Cory Engelen paid Osborn's child support for him through the Chase account.

(Doc. # 58 at 13.) The government further states that, if offered, "this statement would be redacted to be 'Osborn stated that payments for his child support were made to the California Department of Child Support from the Infinite One account.'" (Doc. # 58 at 13.) The government argues that the use of this redacted version of Defendant Osborn's statement in a joint trial would be consistent with *Richardson v. Marsh*, 481 U.S. 200 (1987). (Doc. # 58 at 13.)

In *Bruton*, the United States Supreme Court held that the admission at a joint trial of a co-defendant's confession that implicated the defendant constituted prejudicial error even though the trial court instructed the jury that the confession could only be considered against the co-defendant and not against the defendant. Though courts assume that jurors follow the instructions given to them, the Court in *Bruton* recognized that "there are some contexts in which the risk that the jury will not, or cannot, follow

4

instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135.

In *Richardson*, the Supreme Court considered *Bruton* and held that, in certain circumstances, the confession of a non-testifying co-defendant could be admitted at a joint trial without violating the defendant's right protected by the Confrontation Clause of the Sixth Amendment. Specifically, the Supreme Court concluded that there is no constitutional violation when "a proper limiting instruction" is given and "the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id*. at 211. The *Richardson* Court also recognized the "important distinction" that, in *Bruton*, the co-defendant's confession "expressly implicat[ed]" the defendant as his accomplice, whereas in *Richardson*, "the confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." *Id*. at 208.

Relying on *Richardson*, the Court finds that the admission at a joint trial of the proposed redacted version of Defendant Osborn's statement, with a proper limiting instruction, would not violate Defendant's Engelen's Sixth Amendment right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. Like in *Richardson*, the proposed redacted version of Defendant Osborn's statement does not mention Defendant Engelen by name and is not incriminating on its face. While Defendant Engelen may be linked to Defendant Osborn's statement by evidence

introduced later at trial, that fact alone does not mean that introduction of the statement would violate Defendant Engelen's Sixth Amendment right.

The Court also finds unpersuasive Defendant Engelen's argument that the introduction of the "dozens of fraudulent documents" allegedly created by Defendant Osborn would necessarily violate his Sixth Amendment right. Although the Court is not presently faced with the question of whether the allegedly fraudulent documents constitute inadmissible hearsay, the Court notes that a statement not offered "to prove the truth of the matter asserted in the statement" is, by definition, not hearsay. Fed. R. Evid. 801(c). Therefore, if the fraudulent documents allegedly created by Defendant Osborn are not offered into evidence to prove the truth of the statements asserted in the documents themselves, as the government asserts, they are not hearsay and no Sixth Amendment issue would arise.

### B.   Evidence to be Introduced against Each Co-Defendant

Defendant Engelen also argues that "[e]xtremely prejudicial and irrelevant evidence regarding [Defendant Osborn] may be introduced in a joint trial." (Doc. # 49 at 4.) In support of this argument, Defendant Engelen asserts that "[a]ll of the evidence necessary to establish Mr. Osborn's guilt related to the wire fraud is largely irrelevant to Mr. Engelen." (Doc. # 49 at 4.)

Defendant Engelen also argues that "[b]ecause of th[e] great disparity in the evidence and the markedly different degrees of culpability of these defendants, Mr. Engelen will be denied any opportunity for a fair and independent evaluation of his individual culpability." (Doc. # 49 at 4.) Defendant Engelen asserts that "no jury will be

able to 'compartmentalize' [the] evidence as it relates solely to Mr. Engelen, and no limiting instruction will be able to cure the 'spill over' effect regarding the evidence to be introduced regarding Mr. Osborn." (Doc. # 49 at 4-5.)  Defendant Engelen also asserts that "[w]ithout the requested severance, inference and suspicion of guilt alone from a joint trial will prohibit the jury from fairly evaluating [his] individual culpability." (Doc. # 49 at 5.)

In response, the government argues that the wire fraud evidence is not only highly relevant, but in fact necessary to its prosecution of Defendant Engelen because 18 U.S.C. § 1957 requires the government to prove that Defendant Engelen knew that the property involved in the transactions was criminally derived and that the property was in fact derived from a specific unlawful activity. (Doc. # 58 at 7-8.) The government's theory is that the monetary transactions engaged in by Defendant Engelen involved the proceeds of Defendant Osborn's alleged wire fraud. (Doc. # 58 at 8.) Thus, even if Defendant Engelen were granted a separate trial, the government would still need to introduce at that trial evidence of Defendant Osborn's alleged wire fraud.

The government also argues that an imbalance in the evidence required for each co-defendant is not, by itself, grounds for a severance. (Doc. # 58 at 9.) In addition, the government argues that the alleged negative "spillover effect" of evidence is insufficient to warrant a severance of trials. (Doc. # 58 at 9.) The government also asserts that the present matter is not a complex case involving many defendants each having a different degree of culpability, which, in certain circumstances, may be grounds for holding

separate trials. (Doc. # 58 at 9-10.) In order to prevent the jury in this case from improperly considering the evidence presented, the government states that it

> will request that the Court instruct the jury that the government has the burden of proving beyond a reasonable doubt that each defendant committed the crimes with which he is charged, that the jury must give separate consideration to each individual defendant and to each separate charge against him, and that each defendant is entitled to have his case determined from his own conduct and from the evidence that is applicable to him.

(Doc. # 58 at 10-11.) In addition, the government states that "[i]f certain evidence is admitted against only the co-defendant and/or for a limited purpose, a contemporaneous limiting instruction should be given." (Doc. # 58 at 11.)

The Court finds the government's argument more persuasive on this issue. It is correct that, in order to be found guilty of violating 18 U.S.C. § 1957, the government must prove, in part, that Defendant Engelen knew "that the transaction involved criminally derived property" and that the property was in fact "derived from [a] specified unlawful activity," in this case, alleged wire fraud in violation of 18 U.S.C. § 1343. *See, e.g.*, *United States v. Irvin*, 682 F.3d 1254, 1270-71 (2012) (setting forth the elements of 18 U.S.C. § 1957). Therefore, contrary to Defendant Engelen's assertion, the evidence necessary to prove Defendant Osborn's alleged wire fraud is also necessary to prove that Defendant Engelen violated 18 U.S.C. § 1957.

In addition, the Court finds that there is not a "great disparity" in the evidence to be presented against each co-defendant in this case. Defendant Osborn is charged in counts 1 through 8 of the indictment with wire fraud and in counts 9 through 11 with causing Defendant Engelen to violate 18 U.S.C. § 1957. Defendant Engelen is charged

in counts 12 through 14 with violating 18 U.S.C § 1957, which, as stated above, requires the government to prove that the money involved in the transactions derived from Defendant Osborn's alleged wire fraud.  Therefore, not only is there not a "great disparity" in the evidence to be presented against each co-defendant, there is, in fact, quite a substantial amount of overlap.  The Court also finds that an appropriate jury instruction can be given to instruct the jury on proper versus improper uses of evidence.

### C.     Mutually Antagonistic Defenses

Defendant Engelen also argues that his defense at trial will be "mutually antagonistic" to Defendant Osborn's defense. (Doc. # 49 at 5.)  While Defendant Engelen admits that "[i]t is unclear what Mr. Osborn's defense at trial will be," he hypothesizes, based on alleged pre-indictment statements made to the government, that Defendant Osborn "will attempt to blame Mr. Engelen." (Doc. # 49 at 5.)

In response, the government argues that, "[i]n order to find that the defenses are so antagonistic as to require a severance, the Court would at this point have to speculate as to what position Defendant Osborn will take at trial." (Doc. # 58 at 15.)

The Court agrees with the government.  At present, the only information that the Court has regarding Defendant Osborn's defense is Defendant Engelen's assertion that, at trial, Defendant Osborn "will attempt to blame" Defendant Engelen.  It is purely speculative whether this, in fact, will be the heart of Defendant Osborn's defense at trial. In addition, without more detail regarding Defendant Osborn's defense, it is impossible for the Court to assess whether the defendants' respective defenses are "mutually

antagonistic."[1]  The Court notes that the Tenth Circuit has previously stated that "[n]either a mere claim of conflicting defense theories nor an attempt by one defendant to cast blame on the other is adequate for a showing of actual prejudice which requires a granting of separate trials."  *United States v. Smith*, 788 F.2d 663, 668 (10th Cir. 1986).

In addition, using a slight variation of the "mutually antagonistic defenses" argument, Defendant Engelen also argues that a separate trial is warranted because his defense will be "entirely antagonistic to Mr. Osborn."  (Doc. # 49 at 6.)  In support, Defendant Engelen states that he "anticipates offering evidence that Mr. Osborn lied to Mr. Engelen; used Mr. Engelen's digital signature without his authorization or knowledge; directed a wire fraud scheme without Mr. Engelen's knowledge; created multiple fraudulent documents in support of his scheme and, generally, took advantage of Mr. Engelen."  (Doc. # 49 at 6.)  Defendant Engelen also states that, as part of his defense to count 14 of the indictment, he "will offer evidence of Mr. Osborn's criminal prosecution and conviction in California," which would "compromise Mr. Osborn's right to a fair trial" and "prevent a reliable judgment."  (Doc. # 49 at 6.)  Defendant Engelen argues that if the Court were to limit his presentation of evidence to protect Defendant

---

[1] In *United States v. Pursley*, 474 F.3d 757, 765 (10th Cir. 2007), the Tenth Circuit set forth a three-part test for determining whether severance is warranted based on mutually antagonistic defenses: (1) the trial court must determine whether the defenses presented are so antagonistic that they are mutually exclusive; (2) because mutually antagonistic defenses are not prejudicial per se, the movant must further show a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence; and (3) if the first two factors are met, the trial court exercises its discretion and weighs the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration.

Osborn, his (Engelen's) right to a fair trial would be impermissibly restricted. (Doc. # 49 at 6.)

In essence, Defendant Engelen argues that he is entitled to a separate trial because the evidence he intends to offer is prejudicial to Defendant Osborn. However, the Court notes that Defendant Osborn has not moved for a separate trial. According to Defendant Engelen, the only potential prejudice that he himself may suffer is an inability to present evidence of Defendant Osborn's criminal prosecution and conviction in California as part of his defense to count 14.

The admissibility of evidence of Defendant Osborn's criminal prosecution and conviction in California is not currently before the Court. Nonetheless, the Court notes the uniqueness of the circumstances if Defendant Engelen were to present such evidence at a joint trial and Defendant Osborn were to object citing Federal Rule of Evidence 404(b). Although not dispositive of the issue, the Court notes an opinion and order from the Northern District of Oklahoma in which the court was faced with a similar issue, namely, whether a defendant, in his own defense, could introduce 404(b) evidence against a co-defendant. *United States v. Ray*, No. 07-cr-0075, 2007 WL 1994071, at *4 (N.D. Okla. July 5, 2007). In that case, the district court concluded, after noting that the facts presented "a somewhat unusual situation," that "there is certainly nothing in Rule 404(b) prohibiting a defendant from using evidence of other crimes against a codefendant, and this is not a source of prejudice necessitating severance under Fed. R. Crim. P. 14(a)." *Id*.

Thus, the Court finds that Defendant Engelen has not shown that a joint trial with Defendant Osborn would subject him to any legally cognizable prejudice, such that a separate trial is required under Federal Rule of Criminal Procedure 14(a).

### III.    Motion to Dismiss Count 14 (Doc. # 50)

Counts 12, 13, and 14 of the indictment charge Defendant Engelen with engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 157.  (Doc. # 3 at 6.)  Specifically, count 14 alleges that on June 14, 2010, Defendant Engelen wired $15,000 from the account of Infinite One, LLC at JP Morgan Chase Bank to the account of Law Office of Evan Ginsburg at Citibank West. (Doc. # 3 at 6.)

Defendant Engelen argues that attorney Evan Ginsburg represented Defendant Osborn in connection with a felony charge in California and that "the money transferred to Mr. Ginsburg was in furtherance of Mr. Osborn's sixth amendment right to representation."  (Doc. # 50 at 2.)  18 U.S.C. § 1957(f)(1) exempts from the definition of "monetary transaction" "any transaction necessary to preserve a person's right to representation as guaranteed by the sixth amendment to the Constitution."  Therefore, Defendant Engelen argues that the transaction specified in count 14 is exempt from prosecution.  (Doc. # 50 at 3.)

In response, the government takes the position that Defendant Engelen's motion "should not be decided before trial" because the motion "is based on the parties' differing interpretations of the evidence they expect will be presented at trial."  (Doc. # 59 at 1–2.)  The government argues that the funds were not used to preserve

Defendant Osborn's right to counsel in the California criminal prosecution because they were not in fact used to pay Mr. Ginsburg's legal fees. (Doc. # 59 at 2.) Instead, the government asserts, Mr. Ginsburg used the funds to repay a loan that Defendant Osborn owed to a third-party. (Doc. # 59 at 3.)

The Court finds that the factual dispute between the parties regarding the actual use of the funds allegedly transferred to Mr. Ginsburg's account precludes the Court from ruling on Defendant Engelen's motion to dismiss count 14 of the indictment at this time.

### IV. Partially Unopposed Renewed Motion for Disclosure of Federal Rule of Evidence 608 and 404(b) Evidence (Doc. # 54)

Defendant Engelen seeks an order requiring the government to provide written notice of its intention to use at trial evidence of: (1) "a crime, wrong, or other act" that it intends to introduce pursuant to Federal Rule of Evidence 404(b), and (2) "specific instances of conduct" that it intends to inquire into on cross-examination pursuant to Federal Rule of Evidence 608(b). (Doc. # 54.)

In response, the government states that, in the Discovery Conference Memorandum and Order previously entered on May 20, 2015 (Doc. # 19), it agreed to provide written notice to Defendant Engelen no later than 21 days before trial if it intends to introduce evidence of crimes, wrongs, or other acts pursuant to Rule 404(b). (Doc. # 55 at 3.) The government states in its response to Defendant Engelen's motion that it "agrees to provide the notice required by Rule 404(b)(2), as previously ordered." (Doc. # 55 at 3.)

In response to Defendant Engelen's argument regarding Rule 608(b) evidence, the government argues that "Rule 608(b) does not create an independent duty of disclosure or advance notice of evidence the government may decide to use in cross-examination of a witness, even if the witness is the defendant." (Doc. # 55 at 3.) In support, the government cites *United States v. Tomblin*, 46 F.3d 1369 (5th Cir. 1995), and *United States v. Baskes*, 649 F.2d 471 (7th Cir. 1980).

Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Rule 404(b)(2), such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." If requested by the defendant, the government must "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial" and "do so before trial." Fed. R. Evid. 404(b)(2).

In the present matter, the government acknowledges its obligation under the Discovery Conference Memorandum and Order to provide 404(b) evidence to Defendant Engelen no later than 21 days before trial. (Doc. # 55 at 3.) The government also states that it intends to comply with this obligation. (Doc. # 55 at 3.) Defendant Engelen has not asserted, and the Court has no reason to believe, that the government will not comply with this obligation.

Rule 608(b) provides that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for

truthfulness." However, "the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b)(1). Unlike Rule 404(b), Rule 608(b) does not require prior disclosure of the "instances of a witness's conduct" that might be inquired into on cross-examination if they are probative of the character for truthfulness or untruthfulness, and Defendant Engelen cites no other authority mandating such disclosure.

## **CONCLUSION**

For the reasons set forth above, the Court ORDERS as follows:

Defendant Engelen's Motion for a Hearing to Determine the Admissibility of any Statements pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence (Doc. # 48) is DENIED AS MOOT;

Defendant Engelen's Motion for a Separate Trial (Doc. # 49) is DENIED;

Defendant Engelen's Motion to Dismiss Count 14 (Doc. # 50) is DENIED WITHOUT PREJUDICE; and

Defendant Engelen's Partially Unopposed Renewed Motion for Disclosure of Fed. R. Evid. 608 and 404(b) Evidence (Doc. # 54) is DENIED.

DATED: January 15, 2016                         BY THE COURT:

*[signature: Christine M. Arguello]*

CHRISTINE M. ARGUELLO
United States District Judge